No. 22-1209

In the
## United States Court of Appeals
### for the District of Columbia Circuit

NORFOLK SOUTHERN RAILWAY CO.,

*Petitioner,*

v.

SURFACE TRANSPORTATION BOARD AND
UNITED STATES OF AMERICA,

*Respondents,*

CSX TRANSPORTATION, INC.,

*Intervenor.*

On Petition for Review of a Decision of the
Surface Transportation Board

**NORFOLK SOUTHERN'S RESPONSE TO MOTIONS TO DISMISS**

William A. Mullins              Shay Dvoretzky
Crystal M. Zorbaugh              *Counsel of Record*
BAKER & MILLER PLLC             Parker Rider-Longmaid
2401 Pennsylvania Ave., NW      Hanaa Khan
  Ste. 300                      SKADDEN, ARPS, SLATE,
Washington, DC 20037             MEAGHER & FLOM LLP
                                1440 New York Ave., NW
                                Washington, DC 20005
                                Telephone: 202-371-7000
                                shay.dvoretzky@skadden.com

*Counsel for Petitioner Norfolk Southern Railway Co.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................iii

INTRODUCTION ............................................................................1

STATEMENT ..................................................................................3

    A.    Legal background................................................................3

        1.    The STB reviews proposed transactions between rail carriers. ......................................................................3

        2.    The courts of appeals have exclusive jurisdiction to review most STB decisions. ......................................5

    B.    Factual and procedural background ...............................6

        1.    In 1982, Norfolk and Western Railway Company acquires control over Southern Railway Company and the consolidated entity becomes Norfolk Southern Corporation..........................................6

        2.    In 1991 and 1998, the ICC and STB granted corporate-family exemptions. ................................7

        3.    CSX sues Norfolk Southern and Belt Line and the district court asks the STB to decide whether the 1982 consolidation authorized Norfolk Southern to control Belt Line. ....................................................8

        4.    The STB determines that the ICC did not authorize Norfolk Southern to control Belt Line in the 1982 consolidation and further concludes that the 1991 and 1998 exemptions did not authorize control either........................................................................10

        5.    Norfolk Southern petitions this Court and files a protective complaint before the district court. .................11

# TABLE OF CONTENTS
(continued)

**Page**

SUMMARY OF ARGUMENT ..............................................................12

ARGUMENT ....................................................................................14

    A.   This Court has jurisdiction over Norfolk Southern's
        claims under the Hobbs Act. ...........................................14

        1.   The courts of appeals review all issues other than
            those expressly set out in the district court's referral
            order. ..........................................................................14

        2.   This Court has jurisdiction over Norfolk Southern's
            challenge to the STB's rulings on the 1991 and 1998
            issues not referred by the district court. ...........................16

    B.   The arguments in the motions to dismiss lack merit. ................18

        1.   Attempts to distinguish *McCarty* on its facts ignore
            this Court's clear, "bright line rule." ..................................18

        2.   The notion that the district court referred the 1991
            and 1998 issues is wrong......................................................20

        3.   The government and CSX mistake the scope of the
            agency proceedings for the scope of the referral. .............23

        4.   The government's policy argument fails............................24

CONCLUSION ................................................................................26

CERTIFICATE OF COMPLIANCE ..................................................27

CERTIFICATE OF SERVICE ..........................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*McCarty Farms, Inc. v.*
   *Surface Transportation Board*,
   158 F.3d 1294 (D.C. Cir. 1998) .......................................... 1, 2, 3, 5, 6,
   ...................................................................... 12, 13, 14, 15, 16, 17,
   .................................................................. 18, 19, 20, 21, 22, 23, 24, 25

*Railroad Salvage & Restoration, Inc. v.*
   *Surface Transportation Board*,
   648 F.3d 915 (8th Cir. 2011) ........................................................19

*Railway Labor Executives' Association v.*
   *Interstate Commerce Commission*,
   894 F.2d 915 (7th Cir. 1990) ................................................ 24, 25

*Union Pacific Railroad v. Ametek, Inc.*,
   104 F.3d 558 (3d Cir. 1997) ........................................ 15, 19, 20, 22

STATUTES

5 U.S.C. § 554(e) ................................................................ 23, 24

28 U.S.C. § 1336(b) ................................................ 1, 2, 5, 6, 12, 13, 14,
   .......................................................... 15, 18, 20, 21, 23, 24

28 U.S.C. § 2321(a) ............................................................ 1, 5, 6, 14, 15

28 U.S.C. § 2342(5) ............................................................ 1, 5, 6, 14, 15

49 U.S.C. § 1302 ...........................................................................3

49 U.S.C. § 1321 ............................................................... 23, 24

49 U.S.C. § 10501 ........................................................................3

49 U.S.C. § 10502(a) ...................................................................4

49 U.S.C. § 11321(a) ...................................................................8

49 U.S.C. § 11323(a) ................................................................3, 4

49 U.S.C. § 11323(a)(1) ...........................................................3, 4

49 U.S.C. § 11323(a)(3) ...............................................................4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**REGULATIONS**

49 C.F.R. § 1117.1 ................................................................................23

49 C.F.R. § 1180.2(d) ...........................................................................4

49 C.F.R. § 1180.2(d)(3) .......................................................................4

49 C.F.R. § 1180.4(c) ...........................................................................4

49 C.F.R. § 1180.4(d) ...........................................................................4

**OTHER AUTHORITIES**

*Black's Law Dictionary* (5th ed. 1979) .................................................15

## INTRODUCTION

This Court has jurisdiction over Norfolk Southern's petition. Under the Hobbs Act, the courts of appeals have "exclusive jurisdiction" over challenges to "all rules, regulations, or final orders of the Surface Transportation Board," 28 U.S.C. § 2342(5), "[e]xcept as otherwise provided by an Act of Congress," *id.* § 2321(a). Norfolk Southern challenges two rulings in the Surface Transportation Board's (STB) decision in *Norfolk Southern Railway Company – Petition for Declaratory Order*, Decision, STB No. FD 36522 (June 17, 2022) (Decision), and no exception to the Hobbs Act applies.

The STB, United States, and CSX Transportation, Inc. (CSX), claim that this Court lacks jurisdiction under 28 U.S.C. § 1336(b), which gives a district court that "refers a question or issue" to the STB "exclusive jurisdiction" over a challenge "arising out of such referral." In their view, the district court that referred questions to the STB in antitrust and state-law litigation between Norfolk Southern and CSX, *see CSX Transp., Inc. v. Norfolk S. Ry.*, No. 2:18-cv-530 (E.D. Va.), has exclusive jurisdiction under 28 U.S.C. § 1336(b). That contention lacks merit.

As the Court explained in *McCarty Farms, Inc. v. STB*, 158 F.3d 1294, 1300 (D.C. Cir. 1998) (citation omitted), § 1336(b) creates only "a 'narrow'"

- 1 -

exception to the courts of appeals' exclusive Hobbs Act jurisdiction. *McCarty* held that § 1336(b) establishes a "bright line rule": "issues expressly set out in the district court's referral order are reviewed by the district court" under § 1336(b), while "[t]he court of appeals reviews all other issues" under §§ 2321(a) and 2342(5). 158 F.3d at 1300.

The Court's jurisdiction here is clear under *McCarty*. The district court's referral order asked only whether the Interstate Commerce Commission's (ICC) approval of a 1982 railway consolidation authorized Norfolk Southern's predecessor to control the Norfolk & Portsmouth Belt Line Railway Company (Belt Line) and, if so, whether that authorization conferred on Norfolk Southern's predecessor immunity from antitrust or state conspiracy law. Only before the STB did Norfolk Southern raise the issues now before this Court—whether two other transactions, one in 1991 and another in 1998, authorized Norfolk Southern to control Belt Line. The district court received no briefing on those questions, and it did not opine on them or refer them to the STB. With no express referral of the 1991 and 1998 issues, Norfolk Southern's challenges fall outside § 1336(b)'s narrow scope, and this Court has jurisdiction under the Hobbs Act.

The contrary arguments in the motions to dismiss are unpersuasive. Despite the motions' efforts to distinguish *McCarty*, *McCarty* held that if a district court does not expressly refer an issue to the STB, the courts of appeals have exclusive jurisdiction to review that issue. In reaching that conclusion, *McCarty* rejected policy arguments just like those the government now advances. And even if policy considerations were relevant, they would support Norfolk Southern, because this Court's definitive appellate review would promote rather than undermine judicial economy.

## STATEMENT

### A.    Legal background

#### 1.    The STB reviews proposed transactions between rail carriers.

The STB has regulated interstate rail carriers since taking over the Interstate Commerce Commission's (ICC) role in 1996. *See* 49 U.S.C. §§ 1302, 10501. One STB and ICC function is and was determining whether to authorize certain "transactions involving rail carriers." *Id.* § 11323(a). One kind of transaction is the "[c]onsolidation or merger of the properties or franchises of at least 2 rail carriers into one corporation for the ownership, management, and operation of the previously separately owned properties." *Id.*

§ 11323(a)(1). Another is the "[a]cquisition of control of a rail carrier by any number of rail carriers." *Id.* § 11323(a)(3). STB or ICC approval of these kinds of transactions makes each carrier involved "exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that rail carrier … exercise control or franchises acquired through the transaction." *See id.* § 11321(a).

Typically, rail carriers seeking approval for a change in control must follow an application process. *See* 49 C.F.R. § 1180.4(c)–(d). Under 49 U.S.C. § 10502(a), however, the agency has identified by regulation certain transactions that may qualify for exemption through a notice of exemption process. 49 C.F.R. § 1180.2(d). Transactions qualifying for an exemption include, as relevant here, "[t]ransactions within a corporate family that do not result in adverse changes in service levels, significant operational changes, or a change in the competitive balance with carriers outside the corporate family." *Id.* § 1180.2(d)(3).

As discussed below, Norfolk Southern's petition challenges the STB's rulings that the ICC's 1991 and the STB's 1998 corporate-family exemptions did not authorize Norfolk Southern to control Belt Line. *See* Pet. 3-4.

2.    **The courts of appeals have exclusive jurisdiction to review most STB decisions.**

The jurisdictional question before the Court is whether it or the district court presiding over an antitrust action between Norfolk Southern and CSX has jurisdiction over Norfolk Southern's challenge to the STB's rulings on the 1991 and 1998 corporate-family exemptions.

Normally, the courts of appeals have exclusive jurisdiction under the Hobbs Act to review decisions of the STB, 28 U.S.C. § 2342(5). The Hobbs Act gives the courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of … all rules, regulations, or final orders of the Surface Transportation Board," *id.*, "[e]xcept as otherwise provided by an Act of Congress," *id.* § 2321(a).

Section 1336(b) carves "a 'narrow'" exception for issues referred to the STB by a district court. *McCarty*, 158 F.3d at 1300 (citation omitted).

> When a district court … refers a question or issue to the Surface Transportation Board for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Surface Transportation Board arising out of such referral.

28 U.S.C. § 1336(b). In *McCarty*, the Court explained the interplay between § 1336(b) and the Hobbs Act: "issues expressly set out in the district court's

- 5 -

referral order are reviewed by the district court" under § 1336(b), while "[t]he court of appeals reviews all other issues" under §§ 2321(a) and 2342(5). 158 F.3d at 1300.

### B.    Factual and procedural background

Both the merits and the jurisdictional disputes in this case center on the STB's rulings that corporate-family transactions approved in 1991 and 1998 do not authorize Norfolk Southern to control Belt Line. The district court presiding over CSX's antitrust and state-law action against Norfolk Southern referred two other questions to the STB. First, did a 1982 consolidation authorize a predecessor of Norfolk Southern to control Belt Line? If so, did that approval confer immunity for exercising that control from antitrust and state conspiracy law? The court did not refer any question on the 1991 and 1998 exemptions to the STB, and Norfolk Southern raised the 1991 and 1998 exemption issues only before the STB after the referral.

### 1.    In 1982, Norfolk and Western Railway Company acquires control over Southern Railway Company and the consolidated entity becomes Norfolk Southern Corporation.

In 1980, Norfolk and Western Railway Company (NW), Southern Railway Company (SRC), and other carriers applied for ICC authorization to

- 6 -

consolidate several carriers. The application proposed that NWS Enterprises, Inc., would acquire control of NW and its subsidiaries and SRC and the subsidiaries designated in the application's appendices as the "consolidated system companies." Decision 4 (citation omitted). One of the appendices identified Belt Line along with all the other railroad companies in which NW or SRC held an ownership interest, noting that NW owned 28.57% of Belt Line, SRC owned 14.29%, and an SRC subsidiary owned 14.28%, for a total of 57.14%. Decision 4 n.8. The ICC granted the application, leaving the consolidated entity, Norfolk Southern Corporation (NSC), in control of 57.14% of Belt Line by combined total shares. *See id.*

### 2.    In 1991 and 1998, the ICC and STB granted corporate-family exemptions.

In 1991, SRC changed its name to Norfolk Southern Railway Company and sought direct control over NW from the ICC under the corporate-family exemption. Decision 16. The ICC approved the transaction, putting Norfolk Southern in direct control of 28% of Belt Line and indirect control of NW's additional 28%. *See* Norfolk Southern Opening Statement 14, STB No. FD 36522 (Sept. 23, 2021) (Opening Statement).

In 1998, the STB granted authority, also under the corporate-family exemption, for NW to merge into Norfolk Southern. Decision 16. The STB's approval of the exemption thus placed 57% of Belt Line under Norfolk Southern's direct control. Opening Statement 14.

### 3. CSX sues Norfolk Southern and Belt Line and the district court asks the STB to decide whether the 1982 consolidation authorized Norfolk Southern to control Belt Line.

In 2018, CSX sued Norfolk Southern and Belt Line in the United States District Court for the Eastern District of Virginia, alleging antitrust, conspiracy, and contract law violations arising from Norfolk Southern's and Belt Line's alleged actions to deprive CSX of rail access to the Norfolk International Terminal. *CSX Transp.*, No. 2:18-cv-530 (E.D. Va.). Norfolk Southern moved to dismiss, arguing that it is immune under 49 U.S.C. § 11321(a) from CSX's antitrust and state-law conspiracy claims because the ICC authorized it to control Belt Line as part of the 1982 consolidation. *CSX Transp., Inc. v. Norfolk S. Ry.*, No. 2:18-cv-530, 2021 WL 2908649, at *2 (E.D. Va. May 18, 2021). Alternatively, Norfolk Southern asked the court to refer the 1982 consolidation and immunity questions to the STB. *See id.* at *10. Norfolk Southern did not mention the 1991 or 1998 corporate-family transactions in

- 8 -

its motion to dismiss or its reply in support of the motion. *See* ECF Nos. 116, 138. Neither CSX nor Belt Line mentioned the 1991 or 1998 exemption, either. *See* ECF Nos. 131, 132.

The district court referred the 1982 consolidation question and dependent immunity issue to the STB, concluding the STB was the "proper authority to clarify the contours of the 1982 consolidation." *CSX*, 2021 WL 2908649, at \*9. The referral order asked:

> [1] Did the 1982 consolidation, whereby NSC acquired an indirect 57 percent interest in Belt Line, involve the ICC/STB granting NSC "approval" to control Belt Line, and [2] if so, did such authorized "control" render it necessary for antitrust and/or state conspiracy laws to yield, whether because Belt Line was then deemed a "franchise" of NSC, or for any other reason?

*Id.* at \*11.

The district court mentioned the 1991 corporate-family transaction in passing in a footnote in the factual background while explaining how Norfolk Southern came to be. *Id.* at \*4 n.7. The court stated that the exemption was "not critical to the Court's analysis." *Id.* The court did not mention the 1991 exemption anywhere else in the referral order, and did not mention the 1998 exemption at all.

**4.    The STB determines that the ICC did not authorize Norfolk Southern to control Belt Line in the 1982 consolidation and further concludes that the 1991 and 1998 exemptions did not authorize control either.**

After the district court referred the 1982 question to the STB, Norfolk Southern successfully petitioned the STB to institute a declaratory proceeding. *Norfolk Southern Railway Company – Petition for Declaratory Order*, Decision, STB No. FD 36522 (Aug. 9, 2021). In its briefing before the STB, Norfolk Southern first addressed whether the ICC's approval of the 1982 consolidation authorized it to control Belt Line. Opening Statement 4-12; Norfolk Southern Reply 32-36, STB No. FD 36522 (Oct. 25, 2021) (Reply). Norfolk Southern then raised two issues it had not presented to the district court: whether the 1991 and 1998 corporate-family exemptions granted it authority to control Belt Line. Opening Statement 13-14; Reply 38-39.

On June 17, 2022, the STB issued its decision. It first addressed the referred question about the 1982 consolidation, ruling that the ICC had not authorized Norfolk Southern's predecessor to control Belt Line because the applicants had only explicitly requested control authorization for the consolidated system companies. Decision 9-14.

The STB then addressed the separate questions on the 1991 and 1998 corporate-family exemptions that the district court had not referred but Norfolk Southern had raised before the STB. The STB rejected Norfolk Southern's arguments, ruling that the corporate-family exemption could not authorize control that the ICC or STB had not previously approved and that the agency had not previously authorized any member of Norfolk Southern's corporate family to control Belt Line. Decision 16.

### 5. Norfolk Southern petitions this Court and files a protective complaint before the district court.

On August 15, 2022, Norfolk Southern petitioned this Court for review of the STB's rulings as to the 1991 and 1998 corporate-family exemptions. Pet. 3-5. The petition explains that this Court has jurisdiction under the Hobbs Act, 28 U.S.C. §§ 2321(a), 2342(5), because the district court did not refer the 1991 and 1998 corporate-family-exemption questions to the STB. Pet. 3-4.

In an abundance of caution, Norfolk Southern also filed a protective complaint under § 1336(b) in the Eastern District of Virginia, likewise challenging the STB's rulings regarding the 1991 and 1998 corporate-family exemptions. *See* Compl., *Norfolk S. Ry. v. STB*, No. 2:22-cv-385, ECF No. 1

(E.D. Va. Sept. 15, 2022). Norfolk Southern asked the district court to hold

the case in abeyance pending resolution of the proceedings before this Court.

*Id.* at 14.

CSX intervened before this Court in defense of the STB's rulings. The

STB and United States then filed one motion to dismiss, and CSX filed an-

other, both contending that the district court has exclusive jurisdiction under

28 U.S.C. § 1336(b).

## SUMMARY OF ARGUMENT

The Court should deny the motions to dismiss because it has jurisdic-

tion over Norfolk Southern's petition.

A.    Section 1336(b) carves a narrow exception from the courts of ap-

peals' exclusive jurisdiction under the Hobbs Act to review STB decisions.

In *McCarty*, the Court held that the courts of appeals review all issues that a

district court has not expressly referred to the STB. 158 F.3d at 1300. The

Court thus has jurisdiction over Norfolk Southern's challenges to the STB's

rulings on the 1991 and 1998 corporate-family-transaction issues, because

the district court did not refer those issues to the STB. The district court's

referral order asked only whether the 1982 consolidation authorized Norfolk

Southern's predecessors to control Belt Line and, if so, whether that authorization conferred immunity from antitrust and state conspiracy law. Further, this Court's review would promote judicial economy by providing definitive appellate resolution of the issues, which the district court has not addressed.

**B.** The government and CSX claim that the district court that referred the 1982 consolidation question has exclusive jurisdiction under § 1336(b). Those arguments lack merit. *First*, attempts to distinguish *McCarty* on its facts ignore the Court's "bright line rule" that only those "issues expressly set out in the district court's referral order are reviewed by the district court." 158 F.3d at 1300. *Second*, the government and CSX incorrectly claim that the district court *did* refer the 1991 and 1998 corporate-family-transaction issues. The district court mentioned the 1991 transaction "for context" in a footnote in the background section of its opinion, calling it "not critical to [its] analysis." *CSX*, 2021 WL 2908649, at *4 n.7. *Third*, the government and CSX contend that the district court must have referred the 1991 and 1998 questions to the STB because Norfolk Southern raised the 1991 and 1998 transactions before the STB. But that's not how § 1336(b) works. *McCarty* made clear that the analysis turns on the questions the district court expressly referred to the agency. *Finally*, the STB and United States' judicial

economy argument fails both because it ignores *McCarty*'s rule and because this Court's review will promote, not undermine, judicial economy.

## ARGUMENT

**A.    This Court has jurisdiction over Norfolk Southern's claims under the Hobbs Act.**

**1.    The courts of appeals review all issues other than those expressly set out in the district court's referral order.**

The courts of appeals review all issues that a district court has not referred to the STB. As noted, the Hobbs Act vests the courts of appeals with "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of … all rules, regulations, or final orders of the Surface Transportation Board," 28 U.S.C. § 2342(5), "[e]xcept as otherwise provided by an Act of Congress," *id.* § 2321(a). Section 1336(b) carves "a 'narrow'" exception to that jurisdiction, *McCarty*, 158 F.3d at 1300, for "a question or issue" that a district court referred to the STB, 28 U.S.C. § 1336(b).

In *McCarty*, the Court explained that § 1336(b) establishes a clear and administrable "bright line rule" for parties "seeking review of an STB decision." 158 F.3d at 1300. *McCarty* held that "issues expressly set out in the district court's referral order are reviewed by the district court" under § 1336(b), while "[t]he court of appeals reviews all other issues" under

§§ 2321(a) and 2342(5). 158 F.3d at 1300; *supra* pp. 5-6. The Court reasoned that whether a claim "arise[s]" out of a referral to the STB under § 1336(b) turns on whether the issue "originate[s]" in the referral. *McCarty*, 158 F.3d at 1299 (quoting *Black's Law Dictionary* 99 (5th ed. 1979)). And claims do not "originate in the district court's referral" where the referral does not "mention" or "reference" them. *Id.* A claim cannot "'arise' out of a referral that makes no mention of them." *Id.*

The Court also explained that its interpretation of § 1336(b) was "consistent with congressional intent." *Id.* at 1300. "Although members of Congress may have expressed an intent to further judicial economy," *id.*, the Court reasoned, its interpretation of § 1336(b) "reduce[s] the chance that appeals are made to the wrong court," *id.* (quoting *Union Pac. R.R. v. Ametek, Inc.*, 104 F.3d 558, 566 (3d Cir. 1997) (Roth, J., dissenting)). Under the Court's "bright line rule," "'[c]ounsel need only look to the language of the district court's referral order to determine whether the issue was properly reviewable by a district court.'" *Id.* (quoting *Ametek*, 104 F.3d at 566 (Roth, J., dissenting)).

### 2. This Court has jurisdiction over Norfolk Southern's challenge to the STB's rulings on the 1991 and 1998 issues not referred by the district court.

**a.** *McCarty* makes clear that this Court has jurisdiction to review the STB's decision on the 1991 and 1998 corporate-family exemption questions not referred to the STB by the district court. The 1991 and 1998 exemptions were not "expressly set out in the district court's referral order." *McCarty*, 158 F.3d at 1300. Indeed, the district court conducted a lengthy analysis of the 1982 consolidation and its potential antitrust immunity implications without mentioning the 1991 or 1998 corporate-family transactions. *See CSX*, 2021 WL 2908649, at *5-10. It then referred to the STB only the questions whether "the 1982 consolidation … involve[d] the ICC/STB granting NSC 'approval' to control Belt Line," and, if so, whether that authorization conferred immunity. *Id.* at *11.

The specific language in the referral underscores that the district court did not refer any unraised questions relating to the 1991 and 1998 exemptions. The 1991 and 1998 questions concern whether Norfolk Southern was authorized to control Belt Line and whether those transactions entitle *Norfolk Southern* to antitrust immunity. But the referral asked whether the 1982 consolidation granted *NSC* control authorization and, if so, whether *NSC*

obtained antitrust immunity. *See id.* But NSC, the consolidated entity that resulted from the 1982 consolidation, no longer existed after the 1991 corporate-family transaction, *see supra* p. 7; indeed, the referral order called the current entity, Norfolk Southern Railway Company, "NSR," *see CSX*, 2021 WL 2908649, at *1. In sum, the district court's focus on NSC confirms that the court referred only the 1982 consolidation question and dependent immunity issue. That makes sense. No party mentioned the 1991 or 1998 corporate-family transactions in the motion-to-dismiss briefing. *Supra* pp. 8-9.

**b.**    District court review here also wouldn't make practical sense. *McCarty* gave "parties a bright line rule" turning on the district-court's express referral. 158 F.3d at 1300. Faithfully adhered to, *McCarty*'s rule would prevent disputes like the motions now before the Court. And for good reason. The district court would be in no better position than this Court to resolve Norfolk Southern's challenges to the STB's rulings on the 1991 and 1998 corporate-family transactions. The relevant facts are not in the district court record, and the district court has considered no briefing on, much less authored an opinion addressing, the 1991 and 1998 issues. Instead, the district court has confined its review to whether the 1982 consolidation gave Norfolk Southern control over Belt Line. Decision 1.

What's more, appellate review here would promote efficiency. Unlike in *McCarty*, where the petitioner challenged the STB's decision on a mix of referred and unreferred issues—and the Court still adhered to its "bright line rule"—this Court's review here would not involve any "duplication of judicial effort." 158 F.3d at 1300. Norfolk Southern challenges the STB's decision only on the unreferred 1991 and 1998 issues. Pet. 3-4. Appellate review would give the parties an efficient, definitive ruling on *all* the issues Norfolk Southern raises, rather than postponing appellate review until the termination of the entire lawsuit in the district court.

**B.    The arguments in the motions to dismiss lack merit.**

**1.    Attempts to distinguish *McCarty* on its facts ignore this Court's clear, "bright line rule."**

The government and CSX try to distinguish *McCarty* on its facts, arguing that the district court in *McCarty* didn't have jurisdiction under § 1336(b) only because the claims there couldn't have been brought in the district court in the first place. STB Mot. 18-19; CSX Mot. 13-14. But *McCarty*'s rule doesn't turn on that peculiarity. True, Norfolk Southern could have raised the 1991 and 1998 issues before the district court. But it didn't, and the district court did not refer those issues to the STB. The result is clear under *McCarty*: this

Court has jurisdiction because only the "issues expressly set out in the district court's referral order are reviewed by the district court." 158 F.3d at 1300; *see supra* pp. 16-17.

The Third and Eighth Circuit decisions (STB Mot. 14-15) don't suggest otherwise. Start with the Eighth Circuit, which observed that its "conclusion may appear to be at odds with" *McCarty* and could do no better than try to distinguish *McCarty*'s facts. *Railroad Salvage & Restoration, Inc. v. STB*, 648 F.3d 915, 920-21 (8th Cir. 2011). Although the Eighth Circuit ultimately concluded that its decision "does not conflict with" *McCarty* based on the facts, *id.*, it could not square its rule with *McCarty*'s.

The Third Circuit's decision in *Ametek* is even less helpful to the government and CSX. For one thing, the ICC in *Ametek* addressed an issue logically antecedent to the referred issue. *See* 104 F.3d at 561 (explaining STB's reasoning that it could not reach referred issue of "reasonableness of the demurrage charges" "before" analyzing "if the demurrage charges apply" in the first place (quoting ICC decision)). Here, in contrast, the STB did not need to resolve the 1991 and 1998 issues to answer the referred 1982 consolidation question. More importantly, *McCarty* rejected *Ametek*'s purposive

approach, relying instead on *Ametek*'s *dissent* in articulating § 1336(b)'s "narrow" "bright line rule." 158 F.3d at 1299-1300 (citing *Ametek*, 104 F.3d at 566 (Roth, J., dissenting)). Indeed, the Court quoted the dissent's view that "[c]ounsel need only look to the language of the district court's referral to determine whether the issue was properly reviewable by a district court." *Id.* at 1300 (quoting *Ametek*, 104 F.3d at 566 (Roth, J., dissenting)). Again, as *McCarty* put it, only "issues expressly set out in the district court's referral order are reviewed by the district court. The court of appeals reviews all other issues." *Id.*

### 2. The notion that the district court referred the 1991 and 1998 issues is wrong.

Despite the clear language of the referral order, the government and CSX next argue that the district court *did* refer the 1991 and 1998 issues to the STB. That contention lacks merit.

*First*, the STB points to the district court's footnote mentioning the 1991 corporate-family transaction. STB Mot. 9, 16 (referring to "the 1990 transaction"). But that footnote, provided "for context," *CSX*, 2021 WL 2908649, at *4 n.7, is not a referral. CSX and the government concede that "[t]he EDVA referral order unquestionably framed the referred question around the 1982

- 20 -

merger"; that "the issues concerning the 1991 and 1998 transactions are distinct"; and that Norfolk Southern first raised the antitrust implications of the 1991 and 1998 transactions in its briefing before the STB. CSX Mot. 10; *see* STB Mot. 6-7, 10. And the STB acknowledges that the district court did not mention the 1998 corporate-family transaction in the referral order. STB Mot. 19. The passing footnote reference to the 1991 transaction—which the district court called "not critical to [its] analysis," *CSX*, 2021 WL 2908649, at *4 n.7—is not a referral and thus fails *McCarty*'s bright-line rule.

*Second*, the government claims that "the referral order as a whole" shows that the referral encompasses the 1991 and 1998 issues. STB Mot. 16. But that's not the test. *McCarty* adopted "a strict construction of Section 1336(b)," making clear that only "issues expressly set out in the district court's referral order are reviewed by the district court. The court of appeals reviews all other issues." 158 F.3d at 1300. *McCarty*'s predictable "bright line rule" forecloses the STB's approach. *See id.*

*Third*, CSX argues that the 1991 and 1998 corporate-family-exemption issues relate to the referred 1982 consolidation issue because the STB's resolution of the 1991 and 1998 issues turned on Norfolk Southern's failure to obtain earlier authorization to control Belt Line. CSX Mot. 11-12. But that

- 21 -

argument again ignores *McCarty*'s express-referral test, which is not a relationship test. *See* 158 F.3d at 1299-1300. CSX's relationship test would eviscerate *McCarty*'s "bright line rule," *id.* at 1300, forcing litigants and courts alike to determine, with no predictable standard, which issues are related enough to the referred question to go back to the district court.

In any event, the district court has no comparative advantage in reviewing the 1991 and 1998 issues Norfolk Southern raises. *Supra* pp. 17-18. Reviewing the 1991 and 1998 issues does not involve revisiting the referred 1982 issue. At the same time, as noted, the STB did not need to address the 1991 and 1998 issues before it could resolve the 1982 issue (unlike the situation in *Ametek*, 104 F.3d at 560-62, *see supra* p. 19). In fact, the district court and STB both analyzed the 1982 issue without mentioning the 1991 or 1998 issues. Any relationship between the referred 1982 issue and the unreferred 1991 and 1998 issues doesn't support CSX's position.

*Finally*, CSX contends that this Court's exercise of jurisdiction would "circumvent the authority of the [district court]" over the 1991 and 1998 issues. CSX Mot. 14. Even putting aside its circularity, that argument fails. For one thing, the district court hasn't opined or even received briefing on the 1991 and 1998 corporate-family transactions. *Supra* p. 17. For another, CSX's

implicit point seems to be that a party must first raise before a district court any argument it wishes to make before the STB. But CSX has cited no authority for such an exhaustion requirement, and Norfolk Southern is unaware of any. To the contrary, STB proceedings are not limited to the contours of district-court referrals. *See* 49 C.F.R. § 1117.1. Again, the "exception to [this Court's] jurisdiction under the Hobbs Act found in § 1336(b) is a 'narrow' one," reaching only issues "expressly set out in the district court's referral order." *McCarty*, 158 F.3d at 1300 (citation omitted).

### 3.  The government and CSX mistake the scope of the agency proceedings for the scope of the referral.

The government and CSX insist that, because Norfolk Southern presented the 1991 and 1998 transactions to the STB, it can't "credibly challenge" whether those transactions were referred to the STB. STB Mot. 17; *accord* CSX Mot. 9-11. Again, the test looks to the scope of the referral—whether the issues are "expressly set out in the district court's referral order," *McCarty*, 158 F.3d at 1300—not the scope of the STB proceedings. True, the STB proceedings went beyond the referral in addressing the 1991 and 1998 issues, but the STB's jurisdiction isn't limited to referred questions. Indeed, the STB grounded its jurisdiction in its "discretionary authority to issue a declaratory

order to terminate a controversy or remove uncertainty" under 5 U.S.C. § 554(e) and 49 U.S.C. § 1321. *Norfolk Southern Railway Company – Petition for Declaratory Order*, Decision, STB No. FD 36522, at 2 (Aug. 9, 2021). Norfolk Southern's presentation of new issues before the STB does not transform the district court's specific referral about the 1982 consolidation into a free-ranging referral "to determine whether Norfolk Southern's claim of immunity could be grounded in *an* agency authorization." STB Mot. 16 (emphasis added). Indeed, the referred immunity question expressly arose only "if" the STB found that *the 1982 consolidation* authorized control over Belt Line. *CSX*, 2021 WL 2908649, at *11; *supra* p. 9.

### 4. The government's policy argument fails.

The government argues that dismissal would serve judicial economy by allowing the district court to "reach a final decision … without having to wait for another court to rule." STB Mot. 20-21. That argument lacks merit.

*First*, *McCarty* considered and rejected such policy arguments in announcing its "bright line rule." *See* 158 F.3d at 1300. To borrow from Judge Posner's opinion on a similar § 1336(b) issue, the government's argument "exemplifies the persistent fallacy of confusing the rationale behind a statute

with the meaning of the statute." *Railway Lab. Execs. Ass'n v. ICC*, 894 F.2d 915, 918 (7th Cir. 1990).

*Second*, the argument is wrong on its own terms anyway, because proceeding before this Court is more efficient than sending the unreferred 1991 and 1998 issues to the district court. The district court, as noted, has neither received briefing on nor decided anything about the 1991 and 1998 issues, so it is no better positioned than this Court to address them. *Supra* pp. 17-18. As *McCarty* put it, "there is little danger of 'piecemeal appeals' where the disputed claims are not raised with the district court, but rather are brought before the STB in the first instance." 158 F.3d at 1300. Further, the district court will need to decide how to proceed toward the scheduled January 2023 trial date no matter which court resolves the 1991 and 1998 issues. Appellate resolution of the issues promotes judicial economy by giving the district court definitive guidance. If the district court decides the questions, in contrast, the Fourth Circuit could later disturb the district court's rulings after the parties and the court have undertaken the expense of trial.

## CONCLUSION

The Court should deny the motions to dismiss and set a merits briefing schedule.

Dated: October 21, 2022

Respectfully submitted,

*/s/ Shay Dvoretzky*

William A. Mullins
Crystal M. Zorbaugh
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW
  Ste. 300
Washington, DC 20037
wmullins@bakerandmiller.com
czorbaugh@bakerandmiller.com

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Hanaa Khan
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com
priderlo@skadden.com
hanaa.khan@skadden.com

*Counsel for Petitioner Norfolk Southern Railway Co.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, as calculated by Microsoft Word, it contains 5,150 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f), and (2) this response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: October 21, 2022

Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Petitioner*
  *Norfolk Southern Railway Co.*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(b) and Circuit Rule 25(f), I hereby certify that on October 21, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that the CM/ECF system will accomplish service.

Dated: October 21, 2022          Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Petitioner*
 *Norfolk Southern Railway Co.*